In the Matter of ETHEL ADDISON, a Person Alleged to be a a Juvenile Delinquent, Appellant.
In the Matter of ELOIS CUNNINGHAM, a Person Alleged to be a Juvenile Delinquent, Appellant.
In the Matter of FANNIE M. PATTERSON, a Person Alleged to be a Juvenile Delinquent, Appellant.

Fourth Department, December 12, 1963.

*Robert Kent Holtsbery* for Ethel Addison, appellant.

*Barry R. Hill* for Elois Cunningham, appellant.

*Raymond J. Sweeney, Jr.,* for Fannie M. Patterson, appellant.

*Michael R. Canestrano* for respondent.

*Per Curiam.* These appeals arise out of an altercation between the three appellants, Ethel Addision, age 13, Elois Cunningham, age 13, and Fannie Mae Patterson, age 14, who shall hereafter be referred to as Ethel, Elois and Fannie Mae, and two sisters, Maureen, age 14, and Nadine Holgate, age 15, as a result of which the three appellants were adjudicated juvenile delinquents. Family Court found that the acts committed were of such a nature that if they had been done by adults they would have constituted assault, third degree (Penal Law, § 244).

In order to put these appeals in proper perspective, it must be stated that the three appellants were Negroes and the complainants girls of the white race. The three girls, with others, were walking home from junior high school when they met the two girls who were walking in the opposite direction and it became necessary for some of the girls to step off the sidewalk so that the others might pass. As they were passing each other, one of the complainants is alleged to have thrown a book at the Negro girls and a scuffle ensued. It was alleged that one of the appellants assaulted one of the two girls with her hand, that another of the appellants kicked one of the girls and that one of the appellants tried to hit the girls with an umbrella. The melee lasted but a short time for all of the girls ran from the scene when a traffic safety lady appeared. The appellants were charged with being juvenile delinquents on petitions made by a police officer, upon information and belief. The petition as to Ethel charged her with willfully, unlawfully and wrongfully assaulting Maureen with her hand. Ethel appeared at the police station without her parents and made an affidavit before a police woman in the presence of detectives in which she admitted that she struck Maureen with her hand. Fannie Mae was charged with assaulting Maureen by kicking her. Elois was similarly charged with assault upon Nadine and Maureen with an umbrella.

A reading of the record indicates that if the affidavits or confessions of the three appellants are incompetent and inadmissible on the ground that the taking of the confessions was in violation of section 724 of the Family Court Act, the proof of the alleged assaults is quite unsatisfactory and raises many doubts. The Act does not prohibit the taking of a confession from a child at the police station, where these were taken, so long as it is not taken in the process of arresting the child and thereafter cutting him off from all communication with parents and others. An attempt is made to bring the confessions in as

a part of the preliminary procedure so that they would come within the proscription of section 735* which makes inadmissible at a fact-finding hearing any statement made during a preliminary conference. The preliminary procedure referred to is that carried on under the probation service connected with the Family Court (§ 734) and does not refer to questioning by the police. The question may be asked: Are the police allowed to question a child at the police station at any time? If the answer is in the negative, the confessions obtained by the police are inadmissible as a matter of law, but it does not appear that the Act so provides. The Act refers to a confession made out of court by a respondent and states that any such confession, unless corroborated, is not sufficient basis for the necessary preponderance of the evidence supporting adjudication of delinquency (§ 744, subd. [b]). There is no interdiction as to confession at the police station although it is clear that a confession may not be obtained prior to notifying parents or relatives and releasing the child either to them or to a Family Court (§ 724). The confessions were taken September 21, 1962 — three days after the altercation, at the juvenile division of the Syracuse Police Department as the result of the children having been issued tickets to report with a parent for questioning.

The confessions as such may not be successfully attacked on any grounds stated by any of the appellants. However, they should not have been received in evidence against all three appellants who were not charged and tried as co-conspirators (*People* v. *Fink,* 243 App. Div. 634). Each confession should have been binding on its author only. A confession may not be considered against any jointly tried defendant other than the one who made the confession (*People* v. *Ramistella,* 306 N. Y. 379; *People* v. *Fisher,* 249 N. Y. 419). This point was raised by the attorney for Elois and the court said it would receive Ethel's confession for all three of them — "they were all there." The confessions clearly implicate the girls with the acts charged in the petitions. However, they stand uncorroborated.

There is little doubt that the appellants were the aggressors in the sense that they were not going to let the white girls pass and that some of them pushed one of the girls and this sparked the altercation. However, there is no testimony to support the finding that Elois struck Maureen with an umbrella except in Elois' confession and in the confession of Ethel who said that she saw Elois hit Maureen with an umbrella. But Ethel's confession is not binding on Elois. Maureen could not identify

---

* All references to sections in this opinion are to sections of the Family Court Act unless otherwise indicated.

anyone in the courtroom who was in the group. She only said that one of the girls had an umbrella and tried to hit her with the point of it but that she was pulled back by another Negro girl. Nadine testified that one of the girls held an umbrella like she was going to hit Maureen. She could not tell who kicked her or her sister. She could not identify any of the girls. Nadine said she shot her Latin book after being slugged by one of the girls. Maureen testified that the girl who came directly at her and who was hitting her was not in the courtroom. Emily Hill, one of the Negro girls who testified, said that Elois had an umbrella and she did not see her do anything with it. Veronica Allen, a Negro girl who testified, said that the only thing she saw Elois do was to hold her hand up with an umbrella.

We have referred to the testimony in detail to show the lack of corroboration of the statements made by the appellants and the uncertainty as to who committed the acts of assault. There is a lack of identification in this respect and any finding based upon a preponderance of evidence in this regard is against the weight of evidence.

The dispositional hearing was more peremptory than the circumstances required. All of the evidence which is material and relevant may be admitted during a dispositional hearing (§ 745) and an adjudication at the conclusion of the dispositional hearing must be based upon a preponderance of the evidence (§ 745, subd. [b]).

Family Court is and should be a forum in which great discretion should be reposed in the Judge when dealing with juveniles. The term "adjudicatory hearing" in section 742 was changed, effective April 23, 1963 (L. 1963, ch. 529, § 11), to "fact-finding hearing". One of the reasons for the change was undoubtedly to give greater latitude to the Judge to find a fact of guilty action but not necessarily ultimately to make this the basis for an order of delinquency. The case at bar is a good example of a case in which a Family Court Judge may well have made this distinction. As has been indicated above, the appellants appear to have been the aggressors under circumstances which are not uncommon among school children. They should, in fact, have been severely reprimanded for their conduct, as should have been the two complainants. However, the great unrest of the minority, to which the appellants belong, in their massive struggle for civil rights, may well have played an important part in this disturbance. The able Family Court Judge who made the adjudication could from his broad experience have made a disposition of this matter short of a finding of delinquency. Inasmuch as we are reversing and dismissing

94

the charges we need not concern ourselves with the punishment but it may be well to comment that indefinite probation seems to be too severe punishment under the circumstances. If we had before us adult appellants in a third degree assault case, we would be disposed to send the matter back for a new trial. We do not believe, however, that there should be another hearing in the matter at bar.

The orders should be reversed and the proceedings dismissed.

GOLDMAN, HENRY and NOONAN, JJ., concur in *Per Curiam* opinion; WILLIAMS, P. J., concurs in the reversal but votes for a new hearing.

Orders reversed on the law and facts, without costs, and proceedings dismissed.